UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HECTOR RODRIGUEZ JR.,

        Plaintiff,

        v.                           Case No. 18-C-1875

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER

---

Plaintiff Hector Rodriguez Jr. filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff argues that the administrative law judge's (ALJ) decision is flawed and requires remand because the ALJ failed to (1) properly assess his subjective complaints caused by his pain symptoms, (2) properly assess the opinions of his treating providers, and (3) incorporate his moderate limitations of concentration, persistence, or pace into his residual functional capacity assessment. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on May 6, 2015. R. 18, 92–93. He listed continuous, daily ankle pain, club feet, an elbow injury from March 2015, and depression as the medical conditions that limited his ability to work. R. 246. Plaintiff claims the alleged onset date for his conditions was May 30, 2013, when he was 36 years old. *Id.* After his application was

denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. R. 170. On July 24, 2017, ALJ Peter Kafkas conducted an in-person hearing where Plaintiff, who was represented by counsel, and a vocational expert (VE), testified. R. 40.

At the time of the hearing, Plaintiff did not have a permanent residence and resided with various family members. R. 51. In 2015, he worked as a personal home care worker. *Id.* In this role, he cleaned and helped individuals move around their home, which involved holding arms and guiding the individuals. R. 53–54. He testified that he fell three times with one client because of his physical pain and was "basically" fired from this job. R. 54. For six to seven years at an earlier point, he worked in marketing and promotion for a company where he sold radio advertising. R. 58–59.

Plaintiff testified that he uses a cane to walk. R. 53. During the hearing, he placed his left hand under his elbow to elevate it, explaining that doing so partially alleviated the shooting sensation that he otherwise feels. R. 56. Plaintiff testified that he can sometimes pick stuff up, but has difficulty holding items for long periods of time or opening a jar. *Id.*

Plaintiff told the ALJ that his main problem was all-day shooting pain below his knees and down to his feet and ankles. R. 61. He also experiences pain in his neck that continues through his shoulder, elbow, and fingers. *Id.* Plaintiff's depression is caused by his ankle symptoms. R. 62. He regularly takes Topamax and Cymbalta for chronic pain and Restoril for his depression and as a sleep aid. *Id.* Plaintiff said these medications "somewhat" help with his pain. *Id.* His pain is also helped by lying down and putting his feet in an upright position. *Id.*

On a typical day, Plaintiff wakes up, takes care of his "personals," and takes his medication. R. 62–63. He then attempts to get comfortable in his recliner and places his feet up. R. 63. He bathes and dresses himself; sometimes he requires assistance entering the bath. *Id.* Plaintiff

2

testified he rarely makes breakfast because he is usually offered a bowl of cereal or something similar, but he is able to make a sandwich or similar food for lunch or dinner. *Id.* He does not do chores. *Id.* He said he is unable to regularly do dishes because it is easy for him to fall without his cane; at most, he testified he could do a few dishes. R. 64.

Plaintiff explained that his pain makes him unable to concentrate. R. 69. He has difficulty reading, completing paperwork, or watching a movie because of the pain. R. 69–70. Plaintiff previously smoked marijuana to relieve his symptoms; he thought it helped his symptoms, but now says "it really didn't." R. 70. He last smoked about three months before the hearing; he testified he does not abuse any other street drugs, prescription drugs, or alcohol. *Id.*

In a fifteen-page decision dated January 19, 2018, the ALJ concluded that Plaintiff was not disabled. R. 18–32. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, and had not engaged in substantial gainful activity since May 30, 2013, the alleged onset date. R. 21. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of bilateral congenital clubfoot with post-surgical correction residuals; degenerative disc disease of the cervical spine; degenerative joint disease of the right elbow; depression; and substance abuse disorder. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Next, the ALJ assessed Plaintiff's residual functional capacity (RFC), finding that he could perform sedentary work except that:

> he may occasionally operate foot controls with the bilateral lower extremities; he
> may never climb ladders, ropes, or scaffolds; he may frequently crouch, kneel,

stoop, and climb ramps and stairs; he may occasionally balance; he may never crawl; he requires the option to alternate between a sitting and standing position at will, provided he is not off-task for more than 5% of the work period; he may frequently handle, finger and feel with the dominant right upper extremity; he may have no exposure to dangerous moving machinery or to unprotected heights; he requires a cane for ambulation; he is limited to understanding, carrying out and remembering no more than simple instructions; he may perform simple and routine tasks; he may perform work involving only simple, work-related decisions and work involving few, if any, workplace changes; and the claimant may have only occasional interaction with the public.

R. 23. During the hearing, the ALJ asked the VE to testify about jobs in the national economy given Plaintiff's age, education, work experience, and RFC. R. 31. At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work as a sales representative; but, based on testimony from the VE, the ALJ found that Plaintiff would be able to perform as a document preparer, final assembler, or touch-up screener. R. 30–32. Accordingly, at step five, the ALJ concluded that Plaintiff was not disabled. *Id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

Plaintiff is entitled to disability benefits under Title II of the Social Security Act if he became disabled before the date he was last insured. 42 U.S.C. § 423(a)(1). To receive SSI under Title XVI of the Social Security Act, Plaintiff must be disabled and have limited means. 42 U.S.C. §§ 1381(a), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs that the claimant can perform exist in significant

4

numbers in the national economy shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, there is no objective test that can distinguish between those impairments that render a person incapable of full-time work from those that merely make such work more difficult. Finally, placing the burden of proof on the claimant makes sense because, if it were otherwise, people may be inclined to seek the benefits that come with a finding of disability when better paying or otherwise attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of administrative agencies in general, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of persuasive evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that proceed to a hearing, is seldom available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether

the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that "under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

The ALJ cited substantial evidence in the record to support his conclusion that Plaintiff was not disabled. With respect to Plaintiff's physical impairments, the ALJ pointed to the opinions of Dr. Thomas Jones, M.D., and Dr. Kurt Reintjes, M.D., both orthopedic consultative physicians who personally examined Plaintiff. R. 28. Dr. Jones examined Plaintiff on December 22, 2009, in connection with a previous application for benefits. R. 345–47. Based on his examination, Dr. Jones concluded "the patient's condition will likely limit his ability [to] perform prolonged standing, ambulation, use of stairs, or any job that keeps him on his feet for significant amount of time. Seated upper extremity work was [sic] certainly be possible and sedentary work would certainly be appropriate." R. 347.

Dr. Reintjes examined Plaintiff some six years later in July 2015 and reached essentially the same conclusion. R. 432. Plaintiff was "nonspecific" about the activities in which he engaged, but reported that he spent his normal day "just trying to ease his pain," which he rated "approximately 8 on a general 1 to 10 scale." Plaintiff told Dr. Reintjes that nothing seemed to resolve his pain. R. 433. Notwithstanding his complaints, Dr. Reintjes concluded: "He states he can stand on one location up to 5 minutes. He can sit for extended periods of time without problem and lift normal weights in my opinion." *Id.*

7

The ALJ also cited the opinions of the State agency medical consultants, Pat Chan, M.D., and Mina Khorshidi, M.D., who reviewed the file in August and December of 2015, respectively. Each concluded that Plaintiff was capable of at least the limited range of sedentary work described in the RFC. R. 111, 130. Although the ALJ recognized that neither had the benefit of review of evidence concerning Plaintiff's cervical degenerative disc disease, he concluded that a sedentary physical RFC was still appropriate given the evidence of good functioning during examinations. R. 28 (noting "2+ reflexes in all his extremities, 4+ to 5/5 strength in the bilateral upper extremities, intact motor function, negative Hoffman's sign, intact pulses, normal muscle tone, and normal coordination, no difficulties with grasping or fine motor manipulation) and good control of his pain after epidural steroid injection and physical therapy (Exs. 9F, 15F/74, 16F/85,105, 120, 17F/6)."

As for Plaintiff's mental impairment, the ALJ cited the opinions of State agency reviewing psychology consultants Roger Rattan, Ph.D., and Stephen Kleinman, M.D. R. 29. Dr. Rattan opined that Plaintiff had only mild difficulties in maintaining social function. R. 113. Dr. Kleiman, on reconsideration, concluded that Plaintiff would have moderate difficulties in social interaction. R. 132. The ALJ also cited the July 25, 2015 report of clinical psychologist Dr. Mark Pushkash, Ph.D. Dr. Pushkash concluded from his examination that Plaintiff "has the intellectual capabilities to comprehend, recall, and follow through on instruction," and that "his ability to concentrate and persist on tasks was not seen to be significantly impaired during the present assessment." R. 438. Dr. Pushkash thought it "likely that Hector would have some difficulties relating appropriately to supervisors and coworkers in the work setting because of irritability," and that his coping skills were compromised by his chronic pain and anxiety/depression." R. 438–39.

These opinions provide direct support for the ALJ's conclusion that Plaintiff retained the capacity for a reduced range of sedentary work. They constitute significantly more than a "mere scintilla" of evidence. In addition to citing this evidence, the ALJ explained why he found the evidence did not support Plaintiff's allegations of disabling physical and mental health symptoms and why he did not find the opinions of Plaintiff's treating physician and mental health professionals convincing. The ALJ thereby provided a logical bridge between the evidence and his conclusions. Plaintiff nevertheless argues that the ALJ committed several errors in concluding that he was not disabled, each requiring the decision be reversed and the case remanded.

**A. Subjective Complaints**

Plaintiff first argues that the ALJ improperly evaluated his subjective complaints. The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms—that is, the claimant's subjective complaints—allegedly caused by his impairments. 20 C.F.R. § 404.1529. This two-step process is also outlined in an agency ruling, SSR 16-3p. SSR 16-3p (Oct. 25, 2017). The ALJ begins by deciding whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a); SSR 16-3p at *3. If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In evaluating the intensity and persistence of a claimant's symptoms, the ALJ looks to "all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating and nontreating source, or other persons about how your symptoms affect you." *Id*. "Signs" are "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)." § 404.1502(g). The ALJ determines whether the claimant's statements about the intensity, persistence, and

limiting effects of his symptoms are consistent with the objective medical evidence and the other evidence of record.  SSR 16-3p.

Plaintiff contends that the ALJ violated SSR 16-3p by failing to build a logical bridge between the evidence and the ALJ's conclusion as to credibility—or, in other words, erred in concluding that Plaintiff's statements were inconsistent with the record.  The court's review of this claim—a credibility, or consistency, determination—is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).  At this stage, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)).  This means the court does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).  "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted).

In his decision, the ALJ cited SSR 16-3p and then proceeded to evaluate Plaintiff's symptoms, following the two-step process.  R. 23–24.  First, the ALJ determined that Plaintiff's medically determinable physical and mental impairments could reasonably produce the pain and other symptoms alleged.  R. 26.  He then turned to the question of whether Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were consistent with the objective medical evidence and the other evidence of record.  The ALJ concluded that "the evidence of record in this case does not support the claimant's allegations of disabling physical or mental health symptoms." *Id.*

In reaching this conclusion, the ALJ acknowledged that Plaintiff's "bilateral foot/ankle impairment affect[s] his capacities for standing and walking." *Id*. The ALJ further concluded, however, that "the objective evidence documents the claimant retains some good function of his lower extremities that are reasonably accommodated by a sedentary exertional residual functional capacity." *Id*. The ALJ then pointed to the medical reports showing that Plaintiff had exhibited intact sensation, palpable pulses, no ankle clonus, the ability to extend and flex the great toe, no edema, he can rise independently from a seated position, he can ambulate independently, and he can independently perform his activities of daily living." *Id*.

Plaintiff challenges the ALJ's reasoning, arguing that his citation of the medical evidence "grossly misconstrues the Record by ignoring evidence (and failing to explain the reason for such omission) that contradicts the ALJ's conclusion." Pl.'s Br., Dkt. No. 13, at 9. He then proceeds to cite, as an example of the alleged gross misconstruction, the fact that the ALJ pointed to findings that Plaintiff's sensation to light touch in his right foot was reported as intact, but failed to mention that it was also found diminished compared to sensation in his arms or other normal locations. *Id.* But the fact that sensation is diminished does not mean it was not intact. *See* R. 603–04. The ALJ did not deny Plaintiff had an impairment of his feet/ankles. It was that impairment that led the ALJ to limit him to sedentary work. The ALJ simply found that the impairment did not render Plaintiff incapable of all work.

Plaintiff likewise makes much of the ALJ's statement that Plaintiff could ambulate independently, noting his need for a cane. But notwithstanding Dr. Reintjes' statement that Plaintiff placed minimal weight on the cane and seemed to use it "more for a component of stability or confidence," R. 433, the ALJ included use of a cane for ambulation in his RFC. R. 22. As the Commissioner suggests, the ALJ may have been referring to the regulations which define the

11

phrase "ambulate effectively" to include use of a single cane for support. 20 C.F.R. Pt. 404 Subpt. P, App. 11.00 musculoskeletal system B(2)(b). In any event, the ALJ accommodated Plaintiff's use of a cane for walking in the RFC, and based on the evidence cited, including the report of Dr. Reintjes, the finding that he did not need a cane for simply standing was not unreasonable.

The ALJ also noted that Plaintiff's conditions improved with treatment. He demonstrated the ability to rise and ambulate independently (despite his foot and ankle condition), claimed that his stability and mobility were significantly improved with his Arizona braces, and stated that his extreme neck pain was "well-controlled" after an epidural steroid injection and that it benefited from physical therapy. R. 26–27. Likewise, the ALJ found that Plaintiff's claims regarding his psychological symptoms were not as severe as claimed. R. 27. The ALJ noted that throughout various exams, Plaintiff had shown good mental health functioning and memory ability and no deficits in comprehension. *Id.* In light of these findings, the ALJ found that the objective evidence suggested that Plaintiff was not as limited as his alleged symptoms. R. 28.

The ALJ also cited Plaintiff's inconsistent statements regarding his medication and drug use as calling into question his reported symptoms:

> He provided conflicting reports regarding the usage and efficacy of his medication, reporting to his primary care physician that hydrocodone was not helpful, but reported the opposite to his pain management provider (Exs. 10F/3, 14F/3, 16F/18-19). The claimant alleged he was unable to receive his prescriptions due to the pharmacy not filling them, but on at least one occasion the pharmacy was contacted and reported the prescriptions were filled but never picked up (Exs. 16F/51, 76). Additionally, the claimant purportedly could not tolerate Gabapentin as it made him feel "high," yet the claimant continued to smoke marijuana (Exs. 14F/8, 16F/79). The claimant's statements concerning his stability, mobility and medication use are therefore inconsistent with allegations of disabling limitations with regard to his bilateral clubfoot impairment.

12

R. 27. The ALJ also found that "the claimant's inconsistent statements regarding his cannabis abuse further undermines the reliability of the claimant's allegations of disabling physical and mental impairments." R. 28.

Plaintiff argues that this and other evidence can be interpreted in a way more favorable to his position. But it is not true that the ALJ ignored an entire line of evidence or distorted the record. Plaintiff's argument to the contrary is really an argument that the court should "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner," which it cannot do. *Lopez*, 336 F.3d at 539. And while it is true that this evidence does not conclusively establish Plaintiff's allegations of pain and disability were exaggerated, they provide a reasonable basis for the ALJ's doubts. The ALJ fairly considered the evidence in the record and explained his reasoning. No more is required.

**B.      Weight Afforded to Treating Source Opinions**

Plaintiff also contends that the ALJ improperly discounted the opinions of his treating medical providers. He claims that the ALJ erred by assigning little weight to Dr. Hudson, his treating primary care doctor, and his treating mental health professionals.

Generally, the medical opinion of a treating physician on the nature and severity of an impairment is given "controlling weight" if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); 20 C.F.R. § 416.927(c)(2); SSR 96-2p; *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson*, 615 F.3d at 749. Put differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required to provide a "sound explanation for his

13

decision to reject it." *Roddy*, 705 F.3d at 636 (citations omitted). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527. The ALJ is not required to "explicitly weigh every factor." *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 414–16 (7th Cir. 2008). Instead, the ALJ need only "sufficiently account for the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ afforded little weight to Dr. Hudson's opinions that Plaintiff was disabled due to depression and bilateral foot pain; that he could not perform work at the sedentary level; that he could not ambulate effectively; and would be off task 30% of the time, 50% less productive, need to elevate his legs above waist level two hours a day, and be absent more than four days a month. He offered several reasons for doing so.

With respect to Dr. Hudson's opinions concerning Plaintiff's mental capacity, the ALJ noted that Dr. Hudson was Plaintiff's primary care physician and her opinions concerning his mental capacity were outside her area of expertise. Dr. Hudson's November 2015 note stating that Plaintiff was disabled due to depression and bilateral foot pain, the ALJ also noted, suggested that her opinion was intended as a temporary recommendation. The note acknowledged that Plaintiff was "currently receiving treatment for both of these problems and we are working on making progress," and recommended "re-assessing his ability to work in 6 months time." R. 29 (citing R. 469). Regarding Dr. Hudson's 2016 and 2017 opinions, the ALJ discounted them because they limited Plaintiff

> to an extreme level that is not consistent with her treatment notes or the overall record, which show the claimant has intact sensation, palpable pulses, no ankle

14

> clonus, the ability extend and flex the great toe, the ability to rise independently from a seated position, and the ability to ambulate independently with the use of the cane.

R. 29. The ALJ also cited reported improvements in Plaintiff's mobility and stability with his Arizona braces. *Id.* As this review shows, the ALJ's decision contemplated the regulatory factors and gave sound reasons for assigning little weight to Dr. Hudson's opinion in light of the evidence as a whole.

Plaintiff also argues that it was error for the ALJ to rely on Dr. Jones' opinion that Plaintiff was able to perform sedentary work involving the upper extremities because it was offered in 2009 and therefore outdated. It is error for an ALJ to "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)); *see also Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (holding the ALJ erred in crediting the state-agency opinions, which were outdated and missing approximately 70 pages of medical records). However, in this case, Plaintiff has not shown that Dr. Jones' opinion was inconsistent with the medical record to an extent that would render it invalid. In fact, the ALJ described Dr. Jones' opinion in the same sentence as he mentioned Dr. Reintjes' opinion (who was, like Dr. Jones, an orthopedic consultative examiner). R. 28. Dr. Reintjes offered his opinion in July 2015, over two years after Plaintiff's alleged onset date and after Plaintiff's fall that occurred in approximately April 2015 (*see* R. 413). R. 432. Dr. Reintjes, over five years after Dr. Jones, reached the same conclusion with respect to Plaintiff's

upper extremities, finding that they were "all within normal limits." R. 433. The ALJ found both the opinions of Dr. Jones and Dr. Reintjes therefore consistent with the "longitudinal medical record." R. 28. Due to the consistency of Dr. Jones's opinion with the medical record and Dr. Reintjes's opinion, the ALJ did not err by giving weight to Dr. Jones' opinion.

Plaintiff also challenges the ALJ's assessment of the opinions of Nurse Practitioner Anthony Hale and Licensed Counselors Arriann Tauer and Lacey Weber. Mr. Hale, Ms. Tauer, and Ms. Weber collectively opined that Plaintiff would require a three-hour rest period during the day due to fatigue, would have difficulty in working with others several times per week, would miss work more than four days per months, would be unable to travel independently depending on pain level, require four to five additional breaks per day, would be off task more than 20% per day, would be 50% less productive, would be unable to perform complicated work and have marked limitations on all of the "paragraph B" criteria. R. 461–64, 793–97. The ALJ assigned their opinions little weight and explained why:

> While Ms. Tauer, Ms. Weber and Mr. Hale are all treating sources for the claimant, the undersigned notes none of the three is an acceptable medical source as defined in the regulations. In addition, their opinions are extreme in relation to the longitudinal record, and appear to be solely based upon the subjective reports of the claimant (Ex. l4F/22-25). Their opinions also conflict with the objective examination findings of Dr. Pushkash, whose objective findings document evidence of good mental functioning, as discussed above. (Exs. 9F, 14F/22-25). Moreover, Mr. Hale's opinions are inconsistent with his own treatment notes, which regularly indicate the claimant is doing well and has a good response to his medications.

R. 30. The ALJ also noted that Plaintiff had displayed good concentration, persistence, memory, and fund of knowledge at his consultative examination with Dr. Pushkash. He was able to do multi-digit multiplication and had no comprehension deficits. This evidence, combined with the opinions offered by the state agency consultants who reviewed the record, provided a reasonable basis for the ALJ's assessment.

16

## C.     Incorporation of "moderate" limitation of CPP into the RFC

Finally, Plaintiff argues that the ALJ failed to incorporate his moderate limitations with respect to concentration, persistence, or pace (CPP) into his RFC. A claimant's RFC specifies the most that a claimant can do despite the limitations caused by his physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the record, including severe and non-severe impairments as well as medical and non-medical evidence. § 404.1545(a), (e). At the hearing stage, it is the responsibility of the ALJ to assess the claimant's RFC. 20 C.F.R. § 404.1546(c).

The ALJ formulated Plaintiff's RFC, by restricting him to sedentary work with the following limitations:

> he may occasionally operate foot controls with the bilateral lower extremities; he may never climb ladders, ropes, or scaffolds; he may frequently crouch, kneel, stoop, and climb ramps and stairs; he may occasionally balance; he may never crawl; he requires the option to alternate between a sitting and standing position at will, provided he is not off-task for more than 5% of the work period; he may frequently handle, finger and feel with the dominant right upper extremity; he may have no exposure to dangerous moving machinery or to unprotected heights; he requires a cane for ambulation; he is limited to understanding, carrying out and remembering no more than simple instructions; he may perform simple and routine tasks; he may perform work involving *only simple, work-related decisions and work involving few, if any, workplace changes*; and the claimant may have only occasional interaction with the public.

R. 23 (emphasis added). The ALJ also observed that because of Plaintiff's "deficits in concentration, persistence or pace, he may perform work involving only simple, work-related decisions and work involving few, if any, workplace changes." R. 26. Plaintiff argues that "simple work-related decisions or few workplace changes does not account for deficits in concentration, persistence, or pace." Pl.'s Br., Dkt. No. 13, at 21.

Plaintiff cites to several Seventh Circuit cases addressing the hypothetical question posed to the VE, but the only argument he advances in his brief concerns what the ALJ included in the

17

RFC.  And three of the cases that Plaintiff offers (*Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009), *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), and *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004)) have been identified by the Seventh Circuit as not supporting the argument for which Plaintiff relies on them—namely, that a limitation to simple work-related decisions in the RFC can never capture a limitation in CPP.  With respect to these cases, the Seventh Circuit observed:

> None of these cases is on point. None holds that a limitation to unskilled work can never adequately account for moderate limitations in concentration, persistence and pace. And none involved a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment.

*Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010).

Here, the ALJ carefully considered the evidence and explained how it supported his RFC assessment.  The ALJ explained that he relied in part on the opinions of Drs. Rattan and Kleinman, state agency consultants who the ALJ noted were "highly qualified and experts in Social Security disability evaluation."  R. 29.  But he did not simply accept their conclusions, neither of which thought that Plaintiff had even moderate limitations in CPP.  The ALJ gave their opinions less weight because "they did not have the opportunity to review more recent medical evidence presented at the hearing level or hear the claimant's testimony, which document some difficulty with memory, reported concentration problems, and symptoms of depression."  R. 29.  Nor did the ALJ accept the extreme limitations offered by Plaintiff's counselors and nurse practitioner for the reasons explained above.  The ALJ essentially chose a middle ground, and found Plaintiff's mental limitations somewhere in between.  He gave partial weight to Dr. Pushkash's opinions, as he found them "consistent with his evaluation findings documented good mental health functioning (e.g. recalling 3/3 objects after a ten-minute delay, accurately calculating several mathematical computations, reciting error-free serial sevens to the number 50, and interpreting a proverb)."  R. 30 (citing 438).  Based on this evidence, the ALJ formulated the RFC that he concluded

accommodated all of Plaintiff's functional limitations. It is not the court's role to substitute its determination for that of the Commissioner. Indeed, where substantial evidence supports the Commissioner's finding, it is deemed conclusive. 42 U.S.C. § 405(g).

Plaintiff's argument also ignores the fact that the agency has revised the rules governing the evaluation of mental impairments. The new regulations became effective in January 2017 and apply to the ALJ's decision in this case. *See SSA, Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016). The new regulations clarify the agency's "special technique" and the procedure used by consultants and ALJs to assess mental impairments. Importantly, the new regulations also make clear that a "moderate" limitation in a functional area means "[the claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2). As the Commissioner points out, the word "'fair' is generally understood to mean 'sufficient but not ample' or 'adequate.' *Merriam Webster's Collegiate Dictionary* 417 (10th Ed. 1996). *See also Black's Law Dictionary* (10th Ed. 2014) (defining 'fair' as 'reasonably good in kind, quality, or degree'); *Cambridge Academic Content Dictionary* (defining fair as 'average: neither very good nor very bad')." Def.'s Mem., Dkt. No. 24, at 6 n.5. This clarification is especially important because the cases on which Plaintiff relies were decided before the regulations explicitly defined what moderate was intended to mean. *See, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (noting "[a]gency regulations, as far as we can tell, do not quantify what is meant by a 'moderate' restriction"). Plaintiff fails to address these changes.

Here, the ALJ's RFC went beyond limiting Plaintiff to "simple" work-related decisions. The ALJ also limited Plaintiff "to understanding, carrying out and remembering no more than simple instructions." R. 23. The ALJ must include all of the functional limitations he found in

19

the RFC, not the limitations that he rejected. The ALJ's RFC determination is consistent with the medical opinions and other evidence offered in this case. Because substantial evidence in the record supports the Commissioner's decision, it must be affirmed.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of June, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court
